King, Haynes and Marvin, JJ. (Sitting in Hancock Circuit by special assignment.)

*PENNSYLVANIA FIRE INS. CO. v. T. & W. R. CARNAHAN.

1. FEES FOR WITNESSES NOT EXAMINED MAY BE INCLUDED IN COSTS.
   The fees of persons subpœnaed as witnesses, on the part of the prevailing party, though such persons are neither sworn nor examined as witnesses at the trial, provided they were subpœnaed in good faith, may be included in the judgment for costs.

2. ACTION BY PARTNERSHIP MAY PROCEED AFTER DEATH OF A PARTNER.
   Where a suit was begun by a co-partnership, in the name of a firm, and one of the co-partners dies, during the pendency of such suit, the court may order the same to proceed to trial and judgment without change of caption or title.

3. ASSIGNMENT OF POLICY AND DEATH OF PARTNER AFTER SUIT IS COMMENCED.
   Where a suit is begun by a co-partnership, in the firm name, upon a policy of insurance, and during its pendency plaintiff assigns to a third party " all the money coming to us upon the collection by us of the insurance policy, except necessary costs, attorney's fees, and expenses incurred in the pending suit for the collection thereof, which suit is to be prosecuted to a successful termination by us for our benefit, but the judgment that may be recovered thereon to belong to the said " third party, absolutely, to satisfy debts due to such third party, and one of the partners in such firm dies during the pendency of such action, and after the execution of such instrument, the court may order the case to proceed to trial and judgment without change of title or caption, and without substituting as plaintiff the party to whom such assignment was made.

4. EVIDENCE—WRITTEN INSTRUMENTS CONTRADICTING ORAL TESTIMONY.
   Where a witness, upon cross-examination, was shown a written instrument, purporting to have been signed by him, containing statements directly in conflict with testimony which he had given in his direct examination, and was asked if he signed such instrument, which question he answered in the negative, and another witness was then called who testified that the preceding witness did sign said instrument, it was not error to admit such written instrument in evidence.

5. EVIDENCE—UNEXPLAINED PORTIONS OF SUCH INSTRUMENT.
   A witness having been examined, and having admitted, upon cross examination, that he signed a certain written instrument, a part of which was in direct conflict with the testimony which he had given in his examination in chief, and as to another part of which, prejudicial to the party calling the witness, no questions were put to the witness, it was error to admit that part of the writing about which no questions were asked.

6. ASSIGNMENT OF POLICY BEFORE SUIT IS BROUGHT.
   Where it appears, in an action by assured, to recover under a policy of fire insurance, that the policy was assigned, before suit was brought, to a creditor, as security or as a pledge, but in the assignment assured was authorized to collect the insurance and turn it over to the assignee, it is not prejudicial error for the court to permit the action to proceed in the name of assured, or after the death of a partner, suggested on the record, in the name of the partnership.

---

*For another decision in action brought by these parties, see **Connecticut Fire** Ins. Co. v. Carnahan, *ante* 186.

**7. INCENDIARY FIRES—CHARGE AS TO DEFENSE OF.**

Where, in an action upon a policy of fire insurance, one of the defenses is that the assured caused the destruction of the property by fire, a charge to the jury, after attention has been called to each question of fact for their determination, that " in view of the large amount of testimony offered, consist-- ing of papers, documents and oral evidence, and in view, also, of the amount involved, and the serious characterof the charge, you should carefully scruti- nize, examine and weigh each and every item of evidence, together with all the circumstances proved on the trial, and give to it such weight as in your'judg- ment seems right; and if you believe, from a preponderance of the evidence, that the plaintiff (a partnership) by one of its members, wilfully caused or procured the property insured to be set on fire, the plaintiff can not recover, and your verdict should be for the defendant;" is not erroneous.

**8. CHARGE TO JURY—LATITUDE ALLOWED IN ARGUMENT.**

Nor is it error for the judge to say, in his charge to the jury " that the attorneys engaged in the trial of this case may call your attention to the evidence; they may present it in such a way as to best suit their respective sides, and they can comment upon the testimony, but they have no right to tell you what disputed point has been proven or disproven."

MARVIN, J.

In the case of the Pennsylvania Fire Insurance Company against T. & W. R. Carnahan, questions are raised which are not raised in either of the cases in which an opinion has been announced. T. & W. R. Carna- han were partners in the business of merchandising in the city of Findlay, in this county. Their stock of goods was covered by a number of fire in- surance policies, one of which was issued by this plaintiff in error. On. the morning of April 6, 1898, a fire occurred, which injured and destroyed a large amount of goods covered by such policy of the plaintiff in error. The company resisted payment and suit was brought against the company by the Carnahans, on this policy, and a verdict was rendered against the company. Motion for new trial was made by the company, which was overruled and judgment entered upon such verdict.

The case comes into this court upon three separate petitions in error and three separate bills of exceptions. Attention is first called to the question raised by the bill taken on a motion made to retax the costs, which were adjudged against the insurance company. From the evi- dence, it appears that a large number of persons were subpoenaed as wit- nesses, on the part of the Carnahans, who were not only not examined on the witness stand, but several of them were not sworn. Fees for these persons, as witnesses, were taxed in the bill of costs and included in the judgment rendered against the insurance company. It is urged, that there was error on the part of the trial court, in carrying these fees into the judgment; and in support of this claim of error it is said that, though the fees of witnesses on the part of the successful party are properly in- cluded in the judgment, those only are to be treated as witnesses, in such judgment, who were actually examined in the case; and in support of this claim counsel for plaintiff in error calls attention to the definition of the word "witness," as given in the authorities, 29 Am. and En. Enc. of Law, (1st Ed.), page 533, defines the word as follows: "A witness is one who appears before a court, judge or other officer, and is examined under oath or affirmation as to his knowledge of matters undergoing judicial inves- tigation."

Abbott's Law Dictionary defines the word "witness" as "A person who, being present, before a court, magistrate or examining officer, orally declares that he has seen or heard or done, relative to a matter in question." Bouvier's Law Dictionary gives this definition of the word: witness: "One, who being sworn or affirmed according to law, deposes

as to his knowledge of facts in issue between the parties in the cause." Other definitions of the word, in the law books, are to the same effect. One of the definitions of the word "witness" in Webster's dictionary is: "One who is cognizant; a person who beholds or otherwise has personal knowledge of anything." That the word, as used in any sections of our statutes, embraces more than simply those who actually testify, is manifest from the reading of the sections.

Section 1301, Rev. Stat., reads: "All witnesses in civil cases shall be allowed the following fees, &c., to be paid by the party at whose instance he is summoned (on demand) and taxed in the bill of costs."

Section 1302, Rev. Stat., reads: "Witnesses attending under recognizance or subpoena, issued by order of the prosecuting attorney, or defendant, before the court of common pleas, or grand jury, or other courts of records in criminal cases, shall be allowed the following fees, &c."

Section 1303, Rev. Stat., reads: "Each person summoned as a witness, &c."

There would seem to be no doubt that in each of these sections there is included in the word "witness," each person, either subpoenaed for the purpose of examination or appearing to testify, whether actually examined or not.

Section 1319, Rev. Stat., provides that: "On the rendition of judgment in any cause the costs of the party recovering, together with his debt or damages, shall be carried into his judgment."

Remembering, that by virtue of sec. 1301, Rev. Stat., witnesses are allowed fees to be paid by the party at whose instance such witness is summoned, and that such fees, if demanded, must be paid before the witness need obey the summons, and that his fees are to be taxed in the bill of costs, and that, under sec. 1319, Rev. Stat., the party recovering shall recover judgment for his costs, it would seem to follow, necessarily, that such judgment should include all fees made by the successful party, for persons subpoenaed as witnesses.

Of course, if a court became satisfied that a party had subpoenaed persons to appear as witnesses without any intention of making use of them, but simply to swell his costs, it would undoubtedly be its duty to refuse to include in the judgment the fees of such persons, but surely it is not the law that the losing party shall never be required to pay the fees of those who have been subpoenaed in good faith, by the successful party, with the full intention of making use of them upon the witness stand, though it should turn out, upon the trial, that their testimony is not needed.

It is by no means unusual for a party, at the trial, to admit as facts many things which, but for such admission, his adversary would be required to prove, and that by reason of such admission, it becomes unnecessary to use these as witnesses whose testimony would otherwise have been important, and whom it would have been negligent to have failed to have present for examination. Doubtless, a court should exercise a sound discretion in allowing fees to be adjudged against a losing party, for those subpoenaed and not examined by the successful party, and when such discretion has been exercised by the trial court, the action will not be reversed except in a case where there has been an abuse of discretion. In the present case, the testimony of W. R. Carnahan is that no person was subpoenaed whom it was not thought it might be necessary to examine, and he specifies what it was expected would be shown by each

witness.   It is not at all clear that any person was subpoenaed for the purpose of increasing the costs of the case, or otherwise, except in the utmost good faith.   It does not appear that there was any abuse of discretion on the part of the trial court, in allowing their fees as a part of the judgment for costs, and there was no error in overruling the motion to re-tax the costs.

Another question, raised by the separate bill of exceptions, arises upon this state of facts :   Suit was begun in the name of T. & W. R. Carnahan as plaintiff, the petition setting out that such plaintiff was a copartnership, composed of two persons, to-wit :   Theophilis Carnahan and William R. Carnahan.   During the pendency of this suit, Theophilis Carnahan died.   Whereupon, an entry was made upon the journal of the common pleas court, in which the action was pending, in the words following : "The plaintiff, by its attorneys, on this, January 31, 1899, suggests that since the commencement of this action T. Carnahan, one of the plaintiff firm, has died, and that the said W. R. Carnahan is now the sole surviving partner ; ordered that this action proceed to judgment without change of caption or title."   Thereafter a motion was made to strike the case from the docket, which was overruled, and the case proceeded to trial and judgment.

The same question is raised in the request of the insurance company, that the court charge the jury to return a verdict for the defendant, which request was refused, so that this court is called upon to say whether, after the death of T. Carnahan, the case could proceed to judgment without any change in title, and without other action by the court than appears in the order already quoted.   The order was, without doubt, made with a view of complying with the provisions of sec. 5146, Rev. Stat., which reads : "Where there are several plaintiffs or defendants, and one of them dies, or his powers as a personal reprsentative cease, if the right of action survive to or against the remaining parties, the action may proceed ; but the death of the party, or the cessation of his powers, shall be first stated on the record."

It is urged, however, that this section has no application, because, it is said, there were not several, but only one plaintiff, the firm of T. & W. R. Carnahan, which brought the suit under favor of sec. 5011, Rev. Stat., which reads :   "A partnership formed for the purpose of carrying on a trade or business in this state, or holding property therein, may sue or be sued, by the usual or ordinary name which it has assumed or by which it is known, and in such case, it shall not be necessary to allege or prove the names of the individual members thereof."   In support of the claim that there was but one party plaintiff, attention is called to the fact that the word "plaintiff," both in the pleadings and in the summons, is in the singular number.   If there were several parties plaintiff, it would seem clear that the action of the court, in entering its order suggesting the death of one, and directing that the case proceed without change of title or caption, was fully justified by sec. 5146, Rev. Stat., already quoted.

On the part of the defendant in error, attention is called to the law on the rights of surviving partners to close up the business of the partnership, to collect debts owing to the partnership, and to pay debts owing by the partnership, citing numerous authorities in support of the position that the surviving partner may proceed to collect, in his own name, debts owing to the firm after the death of one partner ; that he may even check out money in the bank in the name of the firm.   Bates on Partnership, p. 296 ; and to the same effect is Barry v. Briggs, 22 Mich., 201 ; 10 Iowa, 294 ;

George on Partnership, page 401, and many other authorities. Bates says, at page 726: "A surviving partner has power to receive payments, collect debts and settle claims, and his receipt is a valid discharge."

Without reading the other authorities, to which attention was called, it is without doubt the case, that under the common law, in a case like this, the surviving partner could have brought the action originally and maintained it. But, it is said that the statutes of Ohio have changed the common law in that regard in this state. The secs. are 3167 and 3169, Rev. Stat. These provide for an inventory and appraisement of the partnership assets, upon the death of one of the partners, and the conditions upon which the surviving partner may take the assets as his own.

On the part of the plaintiff in error, it is urged that the means pointed out by the sections of the statute to which attention has just been called, are not to the exclusion of the rights of the surviving partner under the common law.

It seems clear, that our legislature intended to provide an exclusive means for winding up the affairs of the partnership. It is true, that there are many good lawyers who insist that such is not what was done by our legislature; that is to say, that the sections referred to do not provide an *exclusive* means for winding up the affairs of the partnership. But the statutes, the sections to which attention has just been called, have been amended at different times, and now seem to fully provide for the closing up of partnership business. The amended sections provide, that in case the surviving partner sees fit, elects to accept the assets at the appraised value, and pay the debts, he may do so; and there is a provision that if he fail to do that, a receiver may be appointed. It did seem to be a very doubtful question, as to what the condition of the partnership would be, and how it was to be wound up, under the statutes as they were, providing for the inventory and appraisement, and permitting the surviving partner, at his election, to take the assets at the appraised value and pay the debts, but making no provisions for a case where the survivor elected to do so; but, since the latest amendment providing for a receiver it would seem that the legislature intended to provide an exclusive means for winding up the affairs of the partnership, it is certainly very doubtful, whether, in Ohio, the surviving partner has such rights in closing up the affairs of the partnership as he had at common law, notwithstanding which it does not necessarily follow that the provisions of sec. 5146, Rev. Stat., are not applicable to the present case.

It seems to be conceded in the argument, that if there were several plaintiffs in this action, this section of the statute would apply, but it is said there is only one plaintiff, towit: The firm of T. & W. R. Carnahan. The petition alleges that the plaintiff is a partnership, formed for the purpose of carrying on business in the state of Ohio, etc. Said firm was, at the time hereinafter named, and is composed of Theophilis Carnahan and William R. Carnahan, who are equal partners in said firm. Now, to say because the suit is brought in the firm name, and the singular number is used that, to-wit: the word plaintiff, instead of being in the plural, to say because of that fact, where the petition alleges it is a firm composed of Theophilis Carnahan and William R. Carnahan, would seem to be sacrificing substance to a sheer technicality. By no possibility could any prejudice come to plaintiff in error by the court holding, that this section of the statute applied and by proceeding as the court did proceed in this case.

There was no error on the part of the court in entering the order which was entered and allowing the case to proceed without change in the title, or any substitution of any other party and without striking the case from the docket.

Another question, properly raised by the record, grows out of this state of facts. Subsequent to the bringing of the action, the Carnahans executed a written instrument and delivered it to the H. B. Claflin Co., which instrument reads · "For value received we hereby assign, transfer and set over to the H. B. Claflin Co., a corporation of the city of New York, all the money coming to us upon the collection by us of the following insurance policies belonging to us, save and except necessary costs, reasonable attorneys' fees and expenses incurred and to be incurred by us, in and about the suits now pending, upon the same, for the collection thereof, which suits are to be prosecuted to successful termination by the undersigned T. & W. R. Carnahan for our benefit, but the judgments that may be recovered thereon to belong to the said H. B. Claflin Co. absolutely, to satisfy debts due from us to said company, subject only to costs and charges aforesaid." Then follows a list of policies, including the policy upon which the present suit was brought. And the instrument concludes with the words: "Witness our hand at city of Findlay, Hancock county, Ohio, January 17, 1895. T. & W. R. Carnahan."

The question is made, that after this instrument had been delivered and T. Carnahan had died, the case could not then proceed in the name of the firm of T. & W. R. Carnahan. There was a motion made, as has already been stated, to dismiss the case from the docket, and one of the grounds of that motion was because of the facts just stated, and there was a request made, as has already been stated, to charge the jury to return a verdict for the defendant, which raises the question to which attention is now being called.

Except in so far as this question is affected by the death of T. Carnahan, it seems to be fully answered by the decision of our Supreme Court, in Lowry v. Anderson, 57 Ohio St., 179, the syllabus of which reads: "Upon the transfer by a plaintiff during the pendency of an action of all his interest therein, the action may proceed in the name of such plaintiff, or the court may allow the person to whom the transfer is made to be substituted; but such transfer is no defense to this action." This is in substance the language of sec. 5012, Rev. Stat. So that, if it be held that this written instrument transferred all the interest of the plaintiff in the subject of this action, still the case might properly proceed in the name of the original plaintiff. If we are right in holding that the surviving partner, after the death of his co-partner, might proceed with the case without any change in the title, where no such assignment had been made, it would seem to follow that the case might still proceed without any substitution of parties after such assignment. There was no error, therefore, in holding that the case might so proceed.

Complaint is also made of this language used in the charge: "For its defense the insurance company says that since the commencement of this action the plaintiff has assigned and transferred the entire subject matter of this action to the H. B. Claflin Company, a corporation of another state. This allegation, gentlemen, does not constitute matter for your consideration; you will give no attention to it, but pass to the next."

What has already been said in the case, indicates clearly the opinion of the court upon the charge as thus made. There was no error in that part of the charge.

Fire Insurance Co. v. Carnahan.

Again, the court said, in its charge to the jury: "The attorneys engaged in the trial of this case may call your attention to the evidence; they may present it in such a way as to best suit their respective sides; and they can comment upon the testimony, but they have no right to tell you what disputed point has been proven or disproven."

This is complained of and the question is asked, since when has that become the law, that counsel can not tell the jury what has been proven or disproven. Now, whether the language used is an exact statement of a legal proposition, or not, the defendant was not prejudiced by it, so far as shown by the record; nothing appears as to what counsel said to the jury, but even if it were shown that counsel for either party had said that certain facts were established beyond a peradventure, all that the jury could have understood by the language of the charge would be that the jury, and not attorneys in the case, must determine what the facts were. There was no error to the prejudice of the plaintiff in error in this language in the charge, which would justify a reversal.

Again the court said to the jury: "In view of the large amount of testimony offered, consisting of papers, documents and oral evidence, and in view, also, of the amount involved, and the serious character of the charge, you should carefully scrutinize, examine and weigh each and every item of evidence, together with all the circumstances proved on the trial, and give to it such weight as in your judgment seems right; and if you believe, from a preponderance of the evidence, that the plaintiff, by one of its members, W. R. Carnahan, wilfully caused or procured the property insured to be set on fire, then the plaintiff can not recover, and your verdict should be for the defendant."

There is no claim here that there was a misstatement of the law on this proposition, but only that the language was misleading. A careful reading of the entire charge in the case shows that the court fairly submitted every question to the jury which should have been submitted, and it does not appear that undue prominence was given to the defense of arson. Whoever reads the record in the case, will find that great stress was laid by the insurance company upon the claim that W. R. Carnahan was responsible for the fire, and it was not misleading or erroneous to call such attention to it as the court did, in the language quoted from the charge.

A number of questions are made upon the rulings by the court upon questions of evidence; among them was the introduction of a writing to which was subscribed the name of William Powell. Powell was called as a witness by the insurance company, and testified, the writing which has been mentioned having been handed to him: "I wish you would look at this paper and see if that is a statement that you gave to Mr. Carnahan, and whether that is the paper which you signed?" Prior to this question having been put to Powell, he had testified that he had delivered at the Carnahan store, a short time before the fire, one or more five gallon cans of oil, at the request of W. R. Carnahan. The writing was then presented to him and the question which has been read was asked of him. He answered, "No, I didn't sign that paper." "You did not sign it?" "No, sir." "You say you didn't sign it?" "Yes, sir." Counsel seem to have been determined to have him make that denial as strong as they could. Then Carnahan, when he testified, was asked if Powell signed that writing, and he said he did, that is, Carnahan said Powell did sign it. The writing was a statement wholly at variance with the statement that Powell had made upon the witness stand. If Powell, instead of signing this writing, if he did sign it, had been asked if he had made a statement like this to a party, giv-

ing proper time and place, and he had admitted that he did, of course that could have been used against him; if he had denied that he had made such statement then it would have been entirely competent to call the person to whom it was claimed he had made the statment and show by that person, if it could be done, that he had made such a statement out of court, at variance with the statement he made in court. Here the testimony of Carnahan was that he signed this writing; the testimony of Powell was that he didn't sign it. If he signed it, the paper was properly admissible; Carnahan having testified that he did, it would seem to stand exactly on a footing as if it had been claimed, that instead of having signed the writing he had said that to Carnahan, and he had denied that he had so said it, and Carnahan has been called to prove he did so say. There was no error in the ruling on that question. A. K. VanOrsdall was a witness, and a similar question was raised and the ruling was the same, on a writing purporting to have been signed by him. There was no error upon the ruling on that question.

In support of the proposition that there was no error, attention is called to Shrideley v. State, 23 Ohio St., 130; and especially the fifth clause of the syllabus, and the language of the opinion.

But one other question on the admission of evidence will be considered in detail. It is sufficient to say as to all of them, except the one to be hereafter considered, that no error is found which would justify a reversal.

The remaining question is upon the admission of the written statement signed by the witness John Smith. Smith testified that Carnahan requested him, a couple of months before the fire, to go to the oil refinery, and purchase a barrel of coal oil, which he did. He took the barrel of oil and he and W. K. Carnahan placed it in the basement of the store. A written statement was then presented to Mr. Smith, which, he testified, he wrote and swore to. Then he goes on to tell the circumstances under which he made the statement. Now, he had testified that he took oil to the store, as has already been said, and part of this writing is in direct contradiction of that, and no complaint is made that so much of the writing as is in contradiction of that statement was admissible in evidence; it is admitted that it was. That part of the written statement reads: "I never hauled or took any barrel any place for Carnahans, and never knew of such a thing being done; I never knew of coal oil being taking to Carnahans' store in cans or barrels or barrel either before or after their store was burned." But there is another part of the statement which preceeds that, and which reads: "On or about January 7, 1895, I met a stranger between Crofert street and Sandusky street, who offered me two hundred dollars if I would swear falsely, that I had taken or hauled a barrel of coal oil or any empty coal oil barrel or empty barrel, or barrel of any kind to Carnahans' store or any place else for Carnahans."

Smith was not asked, on the witness stand, if he had been offered two hundred dollars by anybody. The question was never asked of Smith, in this case, as to whether that statement was true or false, and yet, against the objection of the insurance company, the court allowed this written statement of Smith's to go to the jury. If this was error, there can be no doubt that it was prejudicial error; no lawyer who understood how to try his law suit, as the lawyers in this case understood how to try a law suit, would fail to claim to the jury, if he felt that he had this evidence properly, that Smith had been approached by somebody, and that nobody but some one connected with the insurance company could have any interest in thus

approaching him, and been offered $200. Smith was never asked if that was true; he had no opportunity, by any question put to him, to deny that statement; now, how it would have affected the jury, we cannot say, but to leave to the jury the written statement without any question as to whether it was true or not seems to the court was clearly error, and prejudicial error. In a case like this, where the evidence is as conflicting as it is here, and where it is as doubtful as to what the real facts are, to allow a statement like that to go to the jury without proper foundation having been laid for it is such an error as the court thinks should reverse the judgment in this case, and for that error, and that error alone, the judgment is reversed.

The case of the Northern Assurance Company of London, England, against these defendants in error, has one question in it not raised in any of the other cases submitted to us, and that is the question of whether an assignment made of an interest in the money to be recovered from this company, to the H. B. Claflin Co., would prevent the maintenance of the action by the plaintiffs Carnahans. The assignment in this case was made before the suit was brought and reads: "Whereas the firm of T. & W. R. Carnahan of Findlay, Hancock county, Ohio, are indebted to the H. B. Claflin Company, a corporation organized under the laws of the state of New Jersey, and having it principal place of business in the city of New York, in the sum of $12,314.41, part of which is past due and part of which is not yet due, but shortly to fall due, and whereas it is contemplated that said H. B. Claflin Company is to make further advances to T. & W. R. Carnahan by way of taking up and paying off certain judgments taken by the Farmers National Bank of Findlay, Ohio, amounting to about $4,-321.50, besides costs, and also to relieve his stock of goods from a certain chattel mortgage, securing said debt and other notes, in all and of every kind, amounting to about $6,000 due and to become due to said bank, and in consideration of further advances of dry goods to be made to said Carnahans, by said the H. B. Claflin Company, as the said parties may further agree upon, the said T. & W. R. Carnahan hereby assign and set over to the said the H. B. Claflin Company, all the right, title and interest said Carnahans have or may have, to the moneys to be paid in satisfaction of the loss sustained, by said Carnahans, by the burning of their store in Findlay, Ohio, by the following insurance companies under the following described policies in insurance;" and among these policies is that of the Northern Assurance Company of London, England. "It is further agreed that other policies held by said Carnahans may at any time be submitted in lieu of the above and to make good the full sum of $25,000 at the election of the said the H. B. Claflin Company. Said Carnahans are to proceed to collect all said moneys in their name, but the same when ready to be paid over shall be paid directly to said the H. B. Claflin Company or their authorized agent. In witness whereof we have hereunto set our hands at Findlay, Ohio, this May 3, 1894." Signed by "T. & W. R. Carnahan," and then by the individual names of "T. Carnahan and W. R. Carnahan," and witnessed.

This, as has already been said, was executed and delivered prior to the bringing of any suit. The language of it provides that the Carnahans were to proceed and collect. The cause of action was in no wise changed by this transfer; the contract itself is, in terms, that the Claflin Company should have the money that arises from the collections to be made upon the policy of insurance, but that the Carnahans should proceed to make the collection. Not only that, but the language of the assignment shows

that it was really a pledge and collateral security, for the indebtedness, and provides that other policies may be substituted for this at the election of the H. B. Claflin Co. While it may not be perfectly clear that the right remained in Carnahans to proceed with this suit, the court is of the opinion that there was no error in allowing them to do so. How any prejudice could come to the insurance company, by allowing the Carnahans to proceed with this suit, we are unable to see and there is no error in the ruling of the court upon that question, and the judgment in the case of the Northern Assurance Company is affirmed.